```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

         - against -                           11 Crim. 468 (NRB)

Erikson Zapata,                                **MEMORANDUM AND ORDER**

                    Defendant.
----------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

## I. Introduction

Defendant Erikson Zapata moves under Federal Rule of Criminal Procedure 12 to dismiss the indictment that charges him with illegal reentry on the ground that the underlying deportation order pursuant to which he was originally removed from the United States is invalid. For the reasons stated below, defendant's motion is denied.

## II. Background

A citizen of the Dominican Republic, defendant originally entered the United States on December 29, 1985 and was admitted on that date as a legal permanent resident. Gov't's Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Indictment ("Opp'n") 3, Ex. B 2.[1] In connection with conduct occurring on or about

---

[1] Defendant asserts that he originally entered the United States on September 29, 1985 and was admitted on that date as a legal permanent resident. Def.'s Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Indictment ("Br.") 1. While it appears from documentary evidence submitted by both defendant and the Government that defendant's assertion is incorrect,

July 4, 1991 in the County of New York, on July 12, 1991, defendant was charged in a four-count indictment with (i) Criminal Possession of a Controlled Substance in the Third Degree for knowingly and unlawfully possessing cocaine with the intent to sell the same in violation of New York Penal Law § 220.16(1); (ii) Criminal Possession of a Controlled Substance in the Third Degree for knowingly and unlawfully possessing cocaine in violation of New York Penal Law § 220.16(12); (iii) Criminal Possession of a Weapon in the Third Degree for possessing a loaded pistol in violation of New York Penal Law § 265.02(4); and (iv) Criminally Using Drug Paraphernalia in the Second Degree in violation of New York Penal Law § 220.50(2). Id. at Ex. C 1-2. On December 4, 1991, defendant pleaded guilty before the Supreme Court of the State of New York, County of New York to Attempted Criminal Possession of a Controlled Substance in the Third Degree in violation of New York Penal Law § 220.16, which the Government asserts is a Class C Felony. Id. at 4, Exs. B 2, D 1-3.[2] On January 15, 1992, defendant was sentenced to a definite imprisonment term of six months. Id. at Ex. D 1.

---

the difference between the two dates is immaterial to our decision. See Br. Exs. A. B; Opp'n Exs. A, B.

[2] It is not entirely clear from the documents presently available from the state court criminal proceedings under which subparagraph of New York Penal Law § 220.16 defendant was convicted. See Opp'n Ex. D 1 (stating "[t]he above-named defendant ha[s] been convicted of the crime of attempt[ed] criminal possession [of a] controlled substance [in the third degree]" but not specifying whether). While the documents and audio recordings available from the subsequent federal immigration proceedings indicate that defendant was convicted of attempted criminal possession of a controlled substance in

On May 13, 1992, Special Agent Michael Diaz of the United States Department of Justice Immigration and Naturalization Service ("INS") completed a form entitled, "Record of Deportable Alien." Br. Ex. B. In the form, Diaz identified defendant as a deportable alien due to his recent conviction for attempted criminal possession of controlled substance in the third degree.[3] Id. Diaz also listed the date of defendant's last entrance to the United States--December 29, 1985--and noted that defendant was ineligible for relief under § 212(c) of the Immigration and Nationality Act ("INA"). Id. On May 15, 1992, INS initiated deportation proceedings against defendant by issuing an arrest warrant and order to show cause why defendant should not be deported from the United States, which was served on defendant on May 27, 1992. Opp'n Ex. B 1. In the order to show cause, the INS alleged that defendant was subject to deportation pursuant to § 241(a)(2)(B)(i) of the INA because he had been convicted of a violation relating to a controlled substance and

---

the third degree with intent to sell, see Opp'n Ex. B 2, Ex. E 3:30; Br. Ex. B, the Government acknowledges that some uncertainty remains in the record as to the precise charge to which defendant pleaded guilty and that accordingly a material doubt persists as to whether his crime of conviction was an aggravated felony under immigration law. See Opp'n 11 n. 6. As discussed further below, however, we agree with the Government that it is irrelevant to deciding this motion whether defendant was convicted of an aggravated felony under immigration law.

[3] Diaz noted that defendant's crime was "[a]ttempted CPCS °3 with intent to sell (cocaine)," which he further identified as an aggravated felony. Br. Ex. B. As discussed above, it is both uncertain and immaterial whether defendant was actually convicted of an aggravated felony. See supra note 2.

pursuant to § 241(a)(2)(A)(iii) of the INA because he had been convicted of an aggravated felony. Id. at Ex. B 2.

Following the completion of his sentence, defendant was taken into the custody of INS and transported to Oakdale, Louisiana. Br. 2. On June 8, 1992, Immigration Judge John Duck presided over defendant's deportation hearing at which an interpreter and representative of the Government were also present. Opp'n Ex. E 0:10.[4] Judge Duck informed defendant that he was entitled to a delay of the deportation hearing in order to prepare a case and hire an attorney. Id. at Ex. E 0:33. In response, defendant stated that he wished to represent himself and proceed that day. Id. at Ex. E 1:15. Defendant further acknowledged that he understood his right to be represented by an attorney and his right to appeal from any decision. Id. at Ex. E 1:45, 2:40. In the ensuing hearing, defendant admitted inter alia: (i) that he was a citizen of the Dominican Republic; (ii) that he was admitted to the United States as a legal permanent resident on December 29, 1985; and (iii) that he was convicted in the County of New York in the State of New York of attempted criminal possession of cocaine with the intent to sell the same. Id. at Ex. E 3:30. Following defendant's admissions and the Government's representation that it was not aware of any

---

[4] Today, deportation proceedings as well as what were formerly known as exclusion proceedings are conducted through a unified procedure referred to as removal proceedings. See Judulung v. Holder, 132 S. Ct. 476, 479 (2011) (discussing the evolution in procedure and nomenclature).

4

grounds for relief, Judge Duck ordered the defendant deported to the Dominican Republic on the basis of the charges listed in the order to show cause. Id. at Ex. E 4:28. Judge Duck advised defendant of his right to appeal the decision, but defendant conveyed that he understood the decision and declined to appeal. Id. at Ex. E 4:30. Judge Duck then brought the deportation hearing to an end by advising defendant that the decision was now final and by providing defendant with a copy of the deportation order. Id. at Ex. E 4:50. See also id. at Ex. F (deportation order). On June 12, 1992, INS executed a deportation warrant for defendant, which repeated that defendant entered the United States on December 29, 1985 and was subject to deportation pursuant to §§ 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA. Id. at Ex. G. On July 9, 1992, defendant was deported from Miami International Airport. Id.

At some point in the intervening years, defendant illegally returned to the United States. On May 31, 2011, defendant was indicted for this offense pursuant to 8 U.S.C. §§ 1326(a) and (b)(1).

### III. Discussion

#### A. The Motion to Dismiss as a Collateral Attack of the Underlying Deportation Order

While "[t]he dismissal of an indictment is an extraordinary remedy reserved only for extremely limited circumstances

5

implicating fundamental rights," United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001), it is clear that a defendant charged with illegal reentry under 8 U.S.C. § 1326 may collaterally attack the validity of the deportation order underlying his prosecution through a pre-trial motion brought under Federal Rule of Criminal Procedure 12. See, e.g., United States v. Calderon, 391 F.3d 370, 372 (2d Cir. 2004) (affirming order granting defendant's motion to dismiss the indictment alleging illegal reentry on the ground that defendant had shown that the underlying deportation order was invalid). In United States v. Mendoza-Lopez, 481 U.S. 828 (1987), "the Supreme Court held that an alien could collaterally challenge the validity of a deportation order when the order is being used to form the element of a criminal offense and the alien has been denied any possibility of judicial review." United States v. Fernandez-Antonia, 278 F.3d 150, 157 (2d Cir. 2002). Congress effectively codified this holding in 8 U.S.C. § 1326(d), which provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the [underlying] deportation order unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

6

As is apparent from the plain meaning of the statutory text, "the requirements are conjunctive" and so a defendant's failure to establish any one forecloses collateral attack and dismissal of the indictment on the basis of the invalidity of the underlying deportation order. Fernandez-Antonia, 278 F.3d at 157. To demonstrate that "entry of the [deportation] order was fundamentally unfair" under § 1326(d)(3), a defendant "'must show both a fundamental procedural error and prejudice resulting from that error.'" United States v. Perez, 330 F.3d 97, 104 (2d Cir. 2003) (quoting Fernandez-Antonia, 278 F.3d at 159).

**B. The Fundamental Fairness of the
Underlying Deportation Order**

**1. The Prevailing Grounds for
Deportation and Relief from Deportation**

At the time of defendant's deportation hearing, §§ 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA each provided separate and sufficient grounds for deportation. Section 241(a)(2)(B)(i) provided in relevant part that "[a]ny alien who at any time after entry has been convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance . . . is deportable." 8 U.S.C.A. § 1251(a)(2)(B)(i) (West 1992). Today, such an offense remains a sufficient ground for deportation. See 8 U.S.C. § 1227(a)(2)(B)(i). Section 241(a)(2)(A)(iii) in turn provided that "[a]ny alien who is convicted of an aggravated felony at

7

any time after entry is deportable." 8 U.S.C.A. § 1251(a)(2)(A)(iii) (West 1992). Today, such an offense similarly remains a sufficient ground for deportation. See 8 U.S.C. § 1227(a)(2)(A)(iii).

At the time of defendant's deportation hearing, § 212(c) of the INA provided discretionary relief from deportation to certain eligible aliens. See 8 U.S.C.A. § 1182(c) (West 1992).[5] "Aliens were required to demonstrate three criteria in order to be eligible for § 212(c) relief: 1) that they possessed lawful permanent resident status; 2) that they had been lawfully domiciled in the United States for seven or more years; and 3) if they had been convicted of an aggravated felony or felonies, that they had served less than five years in prison on those aggravated felony offenses." Zhang v. Holder, 617 F.3d 650, 666 n.15 (2d Cir. 2010). Aliens who met these eligibility requirements were then granted or denied relief from deportation based on "a balancing of the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine

---

[5] As the Government notes, § 212(c) expressly applied only to exclusion proceedings. See Opp'n 6 n.4. However, as the Supreme Court in recent years has repeatedly observed, § 212(c) was long interpreted by the Board of Immigration Appeals "to authorize any permanent resident alien with a lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation." INS v. St. Cyr, 533 U.S. 289, 295 (2001) (internal quotation marks omitted). See also id. at 297 (noting that in 1990 Congress "preclude[d] from discretionary relief anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years").

8

whether the granting of [§ 212(c) relief] appear[e]d in the best interests of this country." Chan v. Gantner, 464 F.3d 289, 295 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). See also Lovell v. INS, 52 F.3d 458, 461-62 (2d Cir. 1995) (listing adverse factors and favorable considerations).

In 1996, Congress initially "eliminated [§] 212(c) relief for certain criminal aliens, including those convicted of aggravated felonies, irrespective of the amount of time they served in prison" before later that same year passing the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which "repealed [§] 212(c) relief and replaced it with a form of relief called 'cancellation of removal,' which is [similarly] unavailable to aggravated felons." Thom v. Ashcroft, 369 F.3d 158, 159 (2d Cir. 2004). However, in INS v. St. Cyr, 533 U.S. 289, 326 (2001), the Supreme Court held that the effect of this repeal was not retroactive and that "§ 212(c) relief remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."

### 2. Defendant Did Not Satisfy the Domicile Requirement for Relief from Deportation Pursuant to § 212(c)

Even assuming arguendo that defendant could satisfy the other requirements for eligibility for relief from deportation

9

under § 212(c), the domicile requirement forecloses defendant's collateral attack in this case. That requirement provides that an alien must have "been lawfully domiciled in the United States for seven or more years." Edwards v. INS, 393 F.3d 299, 307 (2d Cir. 2004). The date on which an alien begins to accrue time toward this period of seven years is the date on which he is lawfully admitted to the United States. See Baraket v. Holder, 632 F.3d 56, 58 (2d Cir. 2011) (noting parties did not dispute that for purposes of the parallel domicile requirement for eligibility for cancellation of removal the alien's "period of continuous residence in the United States began to run on May 11, 1996, when he was admitted as a lawful permanent resident"); Lok v. INS, 681 F.2d 107, 110 (2d Cir. 1982) (alien's "lawful domicile did not begin until his admission as a permanent resident" for purposes of § 212(c)'s domicile requirement). Prior to IIRIRA, an alien continued to accrue time toward this period of seven years until he applied for relief from deportation, which "gave aliens an incentive to delay their deportation proceedings until they could fulfill the requisite seven years." Martinez v. INS, 523 F.3d 365, 368 (2d Cir. 2008). In introducing the legislation that became IIRIRA, Congress sought to address this issue, see H.R. Rep. No. 104-879, at 108 (1997) (discussing reforms intended to remove "the incentive for aliens to prolong their cases in the hope of

10

remaining in the U.S. long enough to be eligible for relief"), and ultimately enacted a stop-time rule triggered by inter alia an alien's commission of an offense that renders him removable from the United States. See 8 U.S.C. § 1229b(d)(1)(B).

Here defendant was lawfully admitted to the United States as a legal permanent resident on December 29, 1985. At the time of his deportation hearing on June 8, 1992, defendant had not accrued the seven consecutive years of residency in the United States that is necessary to be eligible for § 212(c) relief. In his moving papers, defendant argues that (i) "[Judge Duck] failed to inform [defendant] of his right to seek [§] 212(c) and therefore committed error of a fundamental nature," and that (ii) defendant "was prejudiced by this error." Br. 12. However, it was clear from the record at the deportation hearing in which defendant acknowledged that he was admitted to the United States as a legal permanent resident on December 29, 1985 that defendant was facially ineligible for § 212(c) relief because he failed to satisfy the domicile requirement. Therefore, Judge Duck did not commit a procedural error let alone a fundamental procedural error resulting in prejudice. Defendant did not have a right to seek § 212(c) relief. Cf. United States v. Copeland, 376 F.3d 61, 71 (2d Cir. 2004) ("a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally

11

unfair"). See also 8 C.F.R. § 242.17(a) (Hein 1992) ("[t]he immigration judge shall inform the respondent of his . . . apparent eligibility" for relief under § 212(c)); Copeland, 376 F.3d at 72 (discussing § 242.17(a) and the immigration judge's obligation to inform "an eligible alien") (emphasis added).

**3. Defendant's Remaining Arguments Are Without Merit**

Despite the fact that defendant's failure to satisfy the domicile requirement for relief under § 212(c) is facially apparent from defendant's own moving papers,[6] it is clear that defendant's counsel overlooked this issue until the Government brought it to his attention. Nonetheless, defendant's counsel has subsequently pressed three separate arguments as to why the domicile requirement does not foreclose defendant's collateral attack of the underlying deportation order in this case, all of which are without merit.

First, defendant's counsel invites our attention to Judulung v. Holder, 132 S. Ct. 476, 479 (2011) and "respectfully submit[s] that [its holding] has potential implications for issues related to the [domicile requirement]." Def.'s Reply Letter of Dec. 23, 2011 ("Reply") 1. In Judulung, the Supreme Court held that the "comparable-grounds" rule adopted by the Board of Immigration Appeals in determining whether an alien may

---

[6] Even between September 29, 1985 and June 8, 1992 seven consecutive years had not elapsed. See Br. 1-2.

seek relief from deportation under § 212(c), which involved a comparison of the implicated statutory ground for deportation against the available statutory grounds for exclusion, was arbitrary and capricious under the Administrative Procedure Act. 132 S. Ct. at 483-487. In urging us to consider <u>Judulung</u>, defendant's counsel seems to overlook the essential difference between the deference due administrative agency pronouncements and congressional action when he suggests that we ought to find application of the domicile requirement in this case similarly arbitrary and capricious. <u>See</u> Reply 3. Unlike the "comparable-grounds" rule, the domicile requirement is a congressional enactment made explicit in the statutory text of § 212(c) to which the standards of administrative law are inapplicable. Further, even where constitutional questions are implicated, it is well established that "wide deference [is] afforded to Congress in the exercise of its immigration and naturalization power." <u>Tuan Anh Nguyen v. INS</u>, 533 U.S. 53, 72-73 (2001). Thus, contrary to the argument of defendant's counsel, <u>Judulung</u> simply has no relevance to this case.

<u>Second</u>, defendant's counsel advanced at oral argument the position that Judge Duck was obliged to inform defendant that should defendant choose to appeal his decision defendant would continue to accrue time toward the period of seven years required to become eligible for relief under § 212(c) and that

13

his failure to do so rendered defendant's waiver of the right to appeal unknowing and thus void. See Oral Arg. Tr. 2:19-11:1. In light of their obligation to develop the record, immigration judges do have a role unlike Article III judges. Yang v. McElroy, 277 F.3d 158, 162 (2d Cir. 2002). "Given that [immigration judges] have [this] duty to develop the administrative record, and that many aliens are uncounselled," it is also true that "our removal system relies on [immigration judges] to explain the law accurately to pro se aliens." United States v. Copeland, 376 F.3d 61, 71 (2d Cir. 2004). While this obligation exists to insure that aliens are apprised of and given an opportunity to pursue their rights, it may not be contorted to the point that immigration judges are required to inform aliens without any implicated rights how to manipulate the law.

Under defendant's counsel's theory, in order to render defendant's waiver of appeal on June 8, 1992 "knowing," Judge Duck would have had to explain to defendant that defendant might wish to frivolously appeal his entirely correct decision because there was a possibility that defendant could drag out the appellate process long enough that defendant would become eligible for relief under § 212(c). Such a requirement would reflect not an appropriate solicitude for the rights of deportable aliens but rather a perversion of any accepted

14

concept of due process.  Further, defendant's counsel offered no principled basis for limiting his theory--would an immigration judge's obligation to inform aliens how to "game" the system commence when only six, twelve, eighteen, or more months separated them from eligibility?  See Oral Arg. Tr. 3:23-4:21.

Third, defendant's counsel also advanced at oral argument the position that pursuant to Lopez v. Gonzales, 549 U.S. 47 (2006) and Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010) that the crime for which defendant was convicted is no longer a deportable offense for legal permanent residents.  Oral Arg. Tr. 20:9-30:7.  As the Government stated in response to defendant's counsel's initial articulation of this position, "that's just not true."  Id. at 21:4.  The Government proceeded to quote from 8 U.S.C. § 1227(a)(2)(B)(i), which provides in relevant part that "'[a]ny alien who at any time after admission has been convicted of a violation of . . . any law . . . of a State . . . relating to a controlled substance . . . is deportable.'"  Id. at 21:4-23.  In response, defendant's counsel briefly suggested that Lopez must be interpreted to hold that 8 U.S.C. § 1227(a)(2)(B)(i) is unconstitutional.  Compare Oral Arg. Tr. 21:24-22:2 ("the Supreme Court has indicated this is an unconstitutional statute") with id. at 22:8-11 ("THE COURT: You are now asking me to hold the immigration law unconstitutional. MR. ARANDIA: No.").

15

In both Lopez and Carachuri, the Supreme Court analyzed whether a legal permanent resident who had conceded his removability in connection with a controlled substance violation was nonetheless eligible for relief under § 212(c)'s successor provision post-IIRIRA, an inquiry that in both cases turned on the definition of "aggravated felony" under immigration law. See Lopez, 549 U.S. at 51 ("[the legal permanent resident] conceded the controlled substance violation but contested the aggravated felony determination, which would disqualify him from discretionary cancellation of removal"); Carachuri, 130 S. Ct. at 2580 ("[the legal permanent resident] conceded that he was removable, but claimed he was eligible for discretionary relief from removal"). Neither case implicated the domicile requirement, which survives in the successor provision, nor purported to hold that a legal permanent resident could not be deported for any offense short of an aggravated felony. In fact, Carachuri acknowledges that "virtually all drug offenses are grounds for removal under 8 U.S.C. § 1227(a)(2)(B)(i)." 130 S. Ct. at 2583 n.7.[7]

---

[7] It is true that Judge Duck found defendant deportable under then § 241(a)(2)(A)(iii) of the INA because defendant had been convicted of an aggravated felony and that the record at present does not permit us to definitively determine that defendant's conviction was indeed such an aggravated felony. See supra n. 2. However, Judge Duck also found defendant deportable under then § 241(a)(2)(B)(i) of the INA because he had been convicted of a violation relating to a controlled substance, for which attempted possession of cocaine certainly qualifies, and this separate and sufficient ground underlies the indictment in this case. See Indictment 1

16

## IV. Conclusion

For the reasons stated above, defendant's motion to dismiss the indictment is denied. The parties are directed to appear in Courtroom 21A on March 2, 2012 at 2:45 p.m. for a conference to address matters in this case going forward.

Dated:    New York, New York
           February 22, 2012

                                      NAOMI REICE BUCHWALD
                                      UNITED STATES DISTRICT JUDGE

---

(charging 8 U.S.C. §§ 1326(a) and (b)(1) premised on defendant's reentry subsequent to a felony, not aggravated felony, conviction).

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

<u>Attorneys for the Government</u>:
Kristy J. Greenberg, Esq.
U.S. Attorney's Office
One Saint Andrew's Plaza
New York, NY 10007

<u>Attorney for Defendant</u>:
Alexander Arandia, Esq.
Arandia & Arandia
118-35 Queens Boulevard, Suite 1201
Forest Hills, NY 11375